# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY L.L.C., AND SMART, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN KITCHEN CABINET ALLIANCE, <br><br> Defendant-Intervenor. | Court Nos. 24-00155, 24-00156 |

## SUPPLEMENTAL BRIEF ON BEHALF OF PLAINTIFFS

February 13, 2026

Sarah M. Wyss
Yixin (Cleo) Li
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com

**TABLE OF CONTENTS**

**EXECUTIVE SUMMARY** ................................................................................................ 1

**ARGUMENT** .................................................................................................................... 1

    I.    The Lawfulness of Commerce's Initiation of the Scope Inquiry Is a Legal Question .................................................................................................................. 1

    II.   Commerce's Misinterpretation of an Unambiguous Regulation Should Not Be Accorded Deference and Is Contrary to the Regulation ......................................... 3

## TABLE OF AUTHORITIES

**Cases**

Fabuwood Cabinetry Corp. v. United States, 469 F. Supp. 3d 1373 (Ct. Int'l Trade 2020) ........... 5
Gujarat Fluorochemicals Ltd. v. United States, 153 F.4th 1376 (Fed. Circ. 2025) ........................ 2
Itochu Bldg. Prods. v. United States, 733 F.3d 1140 (Fed. Circ. 2013) ......................................... 2
Kalle USA, Inc. v. United States, 923 F.3d 991 (Fed. Circ. 2019) ................................................ 3
Kisor v. Wilkie, 588 U.S. 558 (2019) ............................................................................................. 3
Wind Tower Trade Coal. v. United States, 2025 Ct. Intl. Trade LEXIS 154 (Dec. 2, 2025) .......... 1

**Regulations**

19 C.F.R. § 351.225(a) ............................................................................................................. 1, 3
19 C.F.R. § 351.225(c) ................................................................................................................. 3

**Other Authorities**

Regulations To Improve Administration and Enforcement of Antidumping and Countervailing
    Duty Laws, 85 Fed. Reg. 49,472 (Dep't of Commerce Aug. 13, 2020) ..................................... 4

**EXECUTIVE SUMMARY**

The Department of Commerce ("Commerce") misinterpreted the phrase "particular product" in its own regulation by initiating a scope inquiry under the antidumping ("AD") and countervailing duty ("CVD") orders on wooden cabinets and vanities and parts thereof from China ("WCV") based on a vague product description and a non-exhaustive list of production scenarios. See 19 C.F.R. § 351.225(a) (2022); Mem. to The File from Michael A. Romani re: Initiation of Scope Inquiry (May 24, 2022) (Public Document) (MPR 41;VPR 43) ("Initiation Mem."). Commerce's initiation of the scope proceeding presents the Court with a legal question as to the meaning of the regulatory phrase "a particular product." This phrase unambiguously means a well-defined product. The Court should not accord deference to Commerce's contrary interpretation that it announced when initiating the scope proceeding based on a vague product description. As a result, the Court should find Commerce's initiation of the scope inquiry unlawful as a legal matter and remand to Commerce with instructions to rescind the scope ruling.

**ARGUMENT**

**I.    The Lawfulness of Commerce's Initiation of the Scope Inquiry Is a Legal Question**

Commerce's decision to initiate the scope proceeding is squarely a legal question because Plaintiffs challenge Commerce's interpretation of the regulatory phrase "a particular product" set forth in 19 C.F.R. § 351.225(a). See Wind Tower Trade Coal. v. United States, 2025 Ct. Intl. Trade LEXIS 154 at *8 n. 5 (Dec. 2, 2025) (discussing misinterpretation and misapplication of the law).

The phrase "particular product" in the regulation unambiguously means that Commerce may initiate a scope inquiry only based on specifically described products and may not, as was the case here, initiate a scope proceeding based on a broad description and a non-exhaustive list of

production scenarios. In initiating the scope proceeding on WCV, Commerce interpreted the term "particular product" contrary to the plain meaning, which is now a legal issue before the Court.

Where Commerce's regulatory interpretation is not explicitly stated, but rather inferred from its determination, as is the case here, the Court should still analyze the issue as a legal question. See Gujarat Fluorochemicals Ltd. v. United States, 153 F.4th 1376, 1380-81 (Fed. Circ. 2025) (concluding that Commerce's decision treating an input as "primarily dedicated" to the respondent's downstream production under 19 C.F.R. § 351.525(b)(6)(iv) as a regulatory interpretation issue, not a factual issue). In Gujarat Fluorochemicals, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") noted that the parties disagreed on the meaning of "primarily dedicated" and, although Commerce did not explicitly provide its interpretation of that term, the Federal Circuit regarded Commerce's decision to treat the input in question as "primarily dedicated" to be Commerce's interpretation of the regulation and concluded that Commerce misinterpreted the regulation. See id. at 1381-83. Similarly, here, Commerce's misinterpretation of "a particular product" is shown through its use of a broad product description and non-exhaustive list of product scenarios in its initiation determination.

Under Federal Circuit precedent, Commerce's initiation of the scope proceeding on WCV meets the definition of a pure legal question in that the initiation issue "can be addressed without further factual development or further agency exercise of discretion." Itochu Bldg. Prods. v. United States, 733 F.3d 1140, 1146 (Fed. Circ. 2013) (discussing pure legal question in the context of exhaustion doctrine). Here, the Court can address Commerce's initiation without ordering a remand for further factual development or allowing for agency discretion because the only relevant fact is the vague product description in Commerce's initiation memorandum. Thus, the remaining issue for this Court is a legal one, namely, whether the production description included in

2

Commerce's initiation memorandum meets the regulatory requirement of "a particular product." In conclusion, the legal question here is straightforward: did Commerce lawfully interpret its regulation when it initiated a scope inquiry based on a non-exhaustive list of illustrative production scenarios that span a range of products? The answer is no, as explained below.

## II. Commerce's Misinterpretation of an Unambiguous Regulation Should Not Be Accorded Deference and Is Contrary to the Regulation

When reviewing Commerce's interpretation of its own regulations, the court follows Kisor v. Wilkie, 588 U.S. 558, 559 (2019), which holds that courts should not afford deference to the agency unless the regulation is genuinely ambiguous. Here, the phrase "a particular product" is not ambiguous and this Court should not afford deference to Commerce's interpretation. The use of the term "a particular product" in the regulations unambiguously means a well-defined product with a sufficient description to allow the public to easily identify the product at issue. The traditional tools of construction support this reading. See id. ("A court must carefully consider the text, structure, history, and purpose of a regulation before resorting to deference."). When a term is not defined in the regulations, the Court relies on dictionary definitions to discern the common meaning of the term. See Kalle USA, Inc. v. United States, 923 F.3d 991, 995 (Fed. Circ. 2019). The dictionary definition of "particular" is "of, relating to, or concerned with details." Particular, Merriam-Webster, https://www.merriam-webster.com/dictionary/particular (last visited Feb. 9, 2026). The structure of the regulation also supports this reading. The regulations require that a scope ruling applicant include "a detailed description of the product," including physical characteristics, photographs, and a description of materials and production processes. 19 C.F.R. § 351.225(c). Further, subsection (a) to 19 C.F.R. § 351.225 states that the scope language is often written "in general terms," which contrasts the "particular product" language of a scope inquiry in the same paragraph and further supports that the scope inquiry requires greater product specificity

3

than the broad scope itself. In addition, when promulgating the regulations, Commerce explained that "{i}t is Commerce's intent that the description used throughout the scope inquiry and in the final scope ruling will reflect the 'particular product' at issue—thereby enabling the public and CBP to more easily identify the product at issue." <u>Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws</u>, 85 Fed. Reg. 49,472, 49,477 (Dep't of Commerce Aug. 13, 2020). Taken together, the text, structure, and purpose of the regulation all establish that Commerce may initiate a scope proceeding only on a well-defined product that is easily identified by the public, in order to meet the "particular product" regulatory requirement.

In contrast, Commerce's interpretation of the phrase "a particular product" utterly lacked a detailed description of the product. Instead, Commerce unlawfully initiated the case based on a vague production description and a non-exhaustive, illustrative list of product scenarios. <u>See</u> Initiation Mem. at 2-3 (MPR 41;VPR 43). For example, Commerce's production description indicated that the inquiry covered "<u>any and all merchandise</u> that meets the scope of the orders that are further processed in {Malaysia/Vietnam} and that continue to meet the scope of the orders after further processing in {Malaysia/Vietnam} and upon entry into the United States" and then included a non-exhaustive list of four production scenarios <u>Id.</u> at 2-3 (emphasis added). Thus, Commerce interpreted "a particular product" to mean a broad non-descript category of products based on a non-exhaustive list of production scenarios. This interpretation of the regulatory phrase is directly contrary to the unambiguous requirement of the regulatory mandate that Commerce initiate a scope ruling only with respect to a "particular product." In addition, the four production scenarios that Commerce found to be within the scope of the WCV orders themselves represent a misinterpretation of "a particular product." Scenarios 2 and 3 introduced for the first time a new undefined term, "semifinished." Commerce itself later found that scenarios 2 and 3 do not explain

4

"what processing steps are conducted in each country" and Commerce, therefore, did not have sufficient information to complete its country-of-origin analysis. Mem. to James Maeder from Michael Romani re: Preliminary Scope Determination at 10-11, 33-34 (Mar. 16, 2023) (Public Version) (MPR 136; VPR 636). Defendant cannot reasonably claim that Commerce lawfully initiated a scope inquiry on a particular product when even Commerce itself did not know the processing steps required for such products. Therefore, even looking only at the four production scenarios named in the scope proceeding, Commerce still unlawfully interpreted its regulation because two of the scenarios are not well-defined with sufficient details.

The proper remedy here is rescission of the scope inquiry. Far from simply a procedural error, Commerce's initiation based on a broad product description directly affected the lawfulness of its scope ruling. See Fabuwood Cabinetry Corp. v. United States, 469 F. Supp. 3d 1373, 1384-85 (Ct. Int'l Trade 2020) (explaining that Commerce's flawed initiation based on a defective scope ruling request was not a procedural error but a substantive one).[1] The product description in Commerce's initiation facially contradicts its own regulation, rendering its scope ruling invalid. Rescission of the scope inquiry, therefore, is the only meaningful remedy.

In short, because Commerce misinterpreted its own regulation by initiating a scope inquiry based on a vague product description, the Court should remand the determination to Commerce with instructions to rescind the scope inquiry. Finally, even if the Court were to disagree that Commerce's initiation of the scope inquiry was unlawful as a legal matter, we respectfully request that the Court rule that Commerce's initiation was unsupported by substantial evidence for the reasons explained in Plaintiffs briefs.

---

[1] This case, however, is different from Fabuwood in that Commerce cannot cure its poisoned initiation by providing more explanation on a remand because the vague description directly violates the regulation.

5

<table>
<tr><td>Dated: February 13, 2026</td><td>/s/ Sarah M. Wyss<br>Sarah M. Wyss<br>Yixin (Cleo) Li<br>Mowry & Grimson, PLLC<br>5335 Wisconsin Avenue, NW, Suite 810<br>Washington, D.C. 20015<br>202-688-3610<br>trade@mowrygrimson.com<br>*Counsel to Plaintiffs*</td></tr>
</table>

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Sarah M. Wyss, hereby certify that this brief complies with the five-page limit required by the Scheduling Order in this case. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the page count of this supplemental brief is five pages.

<u>Dated</u>: February 13, 2026

/s/ Sarah M. Wyss
Sarah M. Wyss
Yixin (Cleo) Li
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Plaintiffs*